HENRY TONE, as Administrator, &c. of DANIEL TONE, deceased, *against* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK.

(Decided, March 6th, 1876.)

Under L. 1872, ch. 580—giving to the board of revision and correction of assessments in the city of New York, the power to refer an assessment back to the board of assessors for revisal and correction in such respects as they shall determine—where the board send back an assessment with directions to the board of assessors to correct it in a certain particular—*e. g.*, by striking out awards to property owners caused by a change of grade—although such action

344 COURT OF COMMON PLEAS.

Tone v. The Mayor, Aldermen and Commonalty of the City of New York.

may be illegal and invalid, yet it does not operate to cause the assessment to stand confirmed under L. 1861, ch. 308, § 1, which provides that an assessment shall stand confirmed within thirty days from the time of its presentation for confirmation, if it is not confirmed before that time.

Where work was done for the city of New York, under a contract that payment should be made only upon the confirmation of the assessment for the work: *Held,* that the neglect or refusal of the board of revision and correction of assessments, although illegal, to confirm the assessment, was not imputable to the city so as to support an action for the money due for the work before the assessment had been confirmed, and that the remedy of the contractor was by mandamus to compel the board to confirm it.

APPEAL by defendant from a judgment of this court entered on the verdict of a jury for $6,396 93, rendered by direction of Judge JOSEPH F. DALY, at trial term.

The action was brought to recover an alleged balance remaining due for work done by the plaintiff's intestate, under a contract made with him by the defendant, for regulating, grading, finishing and setting curb and gutter stones, in 123d street, and flagging the sidewalks between New avenue and Eighth avenue, in the city of New York.

The defense interposed was that, by the terms of the contract under which the work was done, payment for the work was to be made only "upon the confirmation of the assessment for the aforesaid work," and that the assessment had never been made. Upon the trial, the facts in regard to the assessment appeared as stated in the opinion.

*John H. Strahan,* for respondent.—1. The action of the board of revision and correction, in returning the assessment list on March 29, 1874, to the board of assessors, with a request to omit assessments for and awards of damages on account of change of grade, was illegal (*People ex rel. Doyle* v. *Green,* 6 Supm. Ct. Rep. 129). 2. By force of law, the assessment was confirmed thirty days after the list was presented to the board of revision and correction for confirmation (L. 1861, ch. 308, p. 702; *People ex rel. Doyle* v. *Green, supra*). 3. Where, as in this case, the action of the board of revision and correction in returning the assessment list to the assessors was illegal, all action taken on the illegal resolution of the board of revision and

correction of March 29, 1874, was null and void (L. 1872, ch. 580, vol. 2, p. 1415; *People ex rel. Doyle* v. *Green, supra*). 4. The defendant having been guilty of gross negligence in relation to this matter of an assessment, the plaintiff is entitled to recover (*Cumming* v. *Mayor of Brooklyn*, 11 Paige, 596; *Beard* v. *City of Brooklyn*, 31 Barb. 142; *Baldwin* v. *City of Oswego*, 1 Abb. Ct. of App. Dec. 62; s. c. 2 Keyes, 132).

*A. J. Requier*, for respondent.

ROBINSON, J.—The questions presented, and on which plaintiff's right of recovery depends, are, whether under the terms of the contract of the intestate with the corporation, the contingency upon which he was to be paid for the work done by him, in regulating, grading, &c., a part of 123d street, to wit, " on the confirmation of the assessment for the aforesaid work," had happened, or whether his right to recover for such work had accrued by reason of some neglect of the defendants in some duty resting on them to have procured such confirmation.

The testimony does not show that any such confirmation ever occurred. An assessment list for the work was made by the board of assessors, and presented to the board of revision and correction for confirmation at its session, held March 19th, 1874, and laid over. At the next meeting, held March 26th, 1874, the assessment list was, by resolution, returned to the board of assessors, with a request to them " to make the assessment conform to the certificate of the comptroller, and omit assessments for and awards of damages on account of change of grades." They were returned accordingly, whereupon applications were made by various parties in interest to the Supreme Court, which issued writs of mandamus against both boards, commanding the board of assessors to retain, in the assessment, such awards for damages in their favor occasioned by change of grade, and said board of revision and correction to confirm said assessment, as originally made, awarding them such damages as had been made in their favor. This subject has since remained in controversy in the courts, and, as yet, no confirmation of any assessment for the work performed by the intestate has been

made, by any affirmative action of the board of revision and correction. It is, however, claimed that such confirmation was effected by operation of law within the provision of § 1 of ch. 308, of the Laws of 1861, from the failure of that board so to act upon and confirm such assessment within thirty days after it had been presented for confirmation. A party to a contract for performance of any public work, who thereby defers his right to payment until confirmation of an assessment to be made therefor, necessarily recognizes and accepts submission to the legitimate action of the public officers whose duty it is to make and confirm such assessment. He also subjects his claims to all such questions as may be raised by any party in interest, in due course of law, as to the legality or regularity of the initiation and prosecution of the work, rendering any such confirmation of an assessment therefor valid and effectual. In the various proceedings initiating and carrying on such public works or improvements, and in imposing assessments therefor, each officer engaged therein is acting as a public officer, and not as the mere agent of the corporation in respect to any of its private interests. The claim is made on the part of the plaintiff that the board of revision and correction having received the assessment list on the 19th of March, 1874, and having failed to confirm it, but having returned it on the 26th to the assessors, with a resolution declining to confirm the same, but expressing a request to make the assessment conform to the certificate of the comptroller, " and omit assessments for and awards of damages on account of changes of grade," by such action confirmed said assessment, or that it consequentially became confirmed after the expiration of thirty days from the time of its first presentation to that board, because (as claimed) the resolution illegally exacted an omission of the damages awarded for change of grade. Such argument is of no avail. The act of 1859 (ch. 302, § 17), required the officers then acting as a board of revision and correction, on certification to them of such an assessment list, to proceed forthwith to confirm the same, or, if necessary, to refer the same back to the board of assessors for revision and correction. The act of 1861 (ch. 308, § 1), required the officers acting as a board of revision and correction to revise such assess-

ment lists without delay, so that the same should be confirmed within thirty days from the time of presentation for confirmation, and it was enacted that if not so confirmed, the assessment list should be deemed to be confirmed within thirty days from the time of its having been presented for confirmation. This statute appears to have imposed upon the board the necessity of executing the duty of revising and correcting the assessment list, and of completing their action in that respect within thirty days after the assessment list had been presented for confirmation, and if it neglected such revision and correction within that period, the assessment, as made by the board of assessors, was to be deemed confirmed. The act of 1872 (ch. 580), in no way assumes to repeal this provision in the act of 1861, as by section 6 it declares the act of 1861 as "continued and established," except as it in terms makes different enactments or provisions inconsistent with the prior act. The provision which bears upon the question under consideration is as follows: "Said board (of revision and correction), shall have power to consider on the merits all objections made to any assessment, and to subpœna and examine all witnesses in relation thereto, and to confirm said assessment, or refer the same back to the board of assessors for revisal and correction in such respects as they shall determine." The limitation on the powers of the board of revision and correction of remitting the assessment to the board of assessors, for correction by that board, as contained in the restricted provisions of the act of 1861, here disappear. No such consequence of non-action is declared, but the act of confirmation of the assessment made by the board of assessors is made an affirmative duty, with intermediate power, however, to refer the assessment list back to the board of assessors for their revisal and correction, and it may well be asserted that this may be done not only in one instance, but again repeated, from time to time, for errors which, in the judgment of the supervising board, may require further correction. I wholly dissent from the position that if the board should, even by precise instruction, remit the list to the board of assessors upon such grounds specially designated in their resolution of remission as were untenable, that their action was, in any respect, illegal or *functus officii*. Their right

to remit the list to the board of assessors was absolute, and if they committed any error in that respect, it was the subject of control by the supervisory powers of the courts by way of mandamus. The order above mentioned, referring back to the other board the matter specified, was certainly not shown to be wholly void, either in law or in fact, as to the other matter, to wit, " the comptroller's certificates ; " and for any delay, remissness or dilatoriness in that board, to again act and make and present to the board of revision and correction for confirmation any further or corrected assessment list, nothing is shown in the testimony rendering the defendants liable therefor. These several officers (as observed), are each acting in a public capacity ; they are all subject to the action of the courts by way of mandamus, to enforce the performance of their duty as public agents, and to expedite their action if they are guilty of any unreasonable delay. Any such proceeding might be initiated by any citizen aggrieved by their dilatoriness, and the plaintiff, his decedent being interested in the confirmation of the assessment, stood, at all times, in equal position with the defendants to enforce such action. The defendants having become involved in litigation upon questions as to which they were made immediate parties and litigants, are not shown or represented, even in respect to such interests in which those of the plaintiff may be deemed to have been involved, to have unfairly or negligently maintained their defense or suffered a delay of the confirmation of the assessment of the expense of the work which the intestate had performed. No such delay could be imputable to them, when they had not assumed by contract any obligation to procure a confirmation of the assessment within any particular time, and the enforcement of its confirmation was equally open to action by the intestate, or plaintiff as his administrator, even if there was any delay in the action of the public officers vested with the duty of making such confirmation, which, however, has not been shown. Upon these considerations, I am of the opinion that no right of action ever accrued upon the claim in suit, for the reason that no assessment for the work performed by the intestate has ever been confirmed, and that no default of the defendants in procuring or effecting any such

confirmation, is alleged or proved by way of excuse for the non-occurrence of the contingency upon which payment for the work done by the intestate was to be made, and the judgment should be reversed and a new trial ordered, with costs to abide the event.

LARREMORE, J.—I concur.

CHARLES P. DALY, Ch. J.—I agree in the reversal, on the ground that the remedy is by mandamus.

Judgment reversed.*

* Decision affirmed in Court of Appeals, June 12, 1877 (5 Week. Dig. 66).